IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 08-cv-01195-CMA-CBS

DANIEL DWYER,
RON SCHMITTOU, and
ALLAN RIETOW,

    Plaintiffs,

v.

BERNIE BICOY,
DAVID PHILLIPS,
VENTURE RESEARCH INSTITUTE, a California corporation,

    Defendants.

## ORDER AND MEMORANDUM OF DECISION

This is a tort and contracts case. Plaintiffs Daniel Dwyer, Ron Schmittou, and Allan Rietow allege that Defendants Bernie Bicoy and David Phillips committed the torts of negligence, negligent misrepresentation, fraudulent concealment, fraudulent misrepresentation, and breach of fiduciary duty in connection with their operation of an investment club, Defendant Venture Research Institute ("VRI"), and that Defendant VRI independently breached a contract with them. This matter comes before the Court on: (1) Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #23); and (2) Defendants' Motion to Dismiss for Failure to Join an Indispensable Party (Dkt. #33). Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332.

**FACTS**

*1.  Factual Background*

The following facts are taken from Plaintiffs' complaint and are presumed true for the purposes of this motion.[1]

Plaintiffs Dwyer, Schmittou, and Rietow are residents of Colorado, Hawaii, and Texas, respectively.  Defendants Bicoy and Phillips are residents of California, and Defendant VRI is a California corporation.

Defendant VRI, formerly known as IDE-Trust, was promoted by Defendants Bicoy and Phillips as an investment club in which members would grant the club the authority to act on their behalf in identifying investment opportunities, and in performing due diligence on those opportunities.  Defendant VRI's "first mandate" was to help all its members avoid fraud by investigating, screening, negotiating, and monitoring its members' investment opportunities.

Plaintiffs were each members of the VRI investment club, and each invested funds into the club.

In 1994, Defendant VRI offered as an investment opportunity an inventory financing program known as the Secured Assets Income Fund ("SAIF").  SAIF was operated by Thomas Sterling, an automotive lender operating in southern California, and the program was designed to provide short-term loans to used car dealers to

---

[1]Currently pending before the Court are Plaintiffs' motion to amend their complaint (Dkt. #32), and their motion to modify this motion to amend (Dkt. # 42), the net effect of which would be to add one additional party plaintiff, and to modify two of Plaintiffs' claims by adding explicit allegations of gross negligence and/or willful behavior.

finance their inventory. To serve as an investment vehicle for SAIF, Defendant VRI created the Secured Assets Trust ("SAT") into which its club members could invest their money, and from which Defendant VRI would lend money to SAIF to conduct its inventory financing.

Upon investing in SAT, Plaintiffs and other club members were promised, *inter alia*, that: (1) SAIF would loan up to 80% of the wholesale value of each vehicle to dealers; (2) the dealers would provide the vehicle titles to SAIF as collateral; (3) the vehicles' liquidation value would exceed the value of the club members' SAT investments; and (4) club members' investment dollars would work completely for their investments. Defendant VRI also promised its members a 10.5% return on their investments, but did not tell them that Defendant VRI would itself be making a 4.5% return on all SAT money lent to SAIF. Specifically, Defendant VRI neglected to tell its members that, pursuant to promissory notes executed by Mr. Sterling, Mr. Sterling promised to pay 15% interest on all SAT money lent to SAIF, and Defendant VRI intended to keep a 4.5% "override" as its profit.

From 1994 until the fall of 2007, Defendants represented to Plaintiffs and other club members that Defendants were monitoring and investigating SAIF, and that the above representations and promises remained true. Nonetheless, for at least two years prior to 2007, Defendants had in fact ceased to verify the accuracy of such representations and promises, and had ceased to monitor the financial condition of SAIF. As a result, Plaintiffs were unaware that, in 2005, SAIF had been sued on

3

racketeering allegations, and that this litigation threatened the continued viability of SAIF, and thus Plaintiffs' investments. Moreover, Plaintiffs remained unaware that: (1) a significant portion of the used car dealers had begun defaulting on their debts; (2) most of SAIF's loans were not actually secured by vehicle titles; and (3) Mr. Sterling had admitted under oath that, beginning sometime in 2004, SAIF had begun operating as a "Ponzi scheme."

In August 2007, SAIF filed for Chapter 11 bankruptcy. As part of the bankruptcy proceedings, a creditors' committee comprised largely of Defendant VRI club members hired an entity experienced in inventory financing to audit SAIF's operations. This entity concluded that, contrary to Defendant VRI's representations, SAIF had never constituted a true inventory financing program. Instead, as the entity summarized:

> The fundamental business model of extending credit appears to be more like a personally guaranteed extension of credit than a typical floor plan arrangement. There is a lack of tying funds directly to collateral that is critical for the operation of a floor plan company.

Plaintiffs argue that, as a result of VRI's failure to conduct ongoing due diligence into SAIF, they lost their entire SAT investments.

## 2. *Procedural History*

On June 5, 2008, Plaintiffs filed a complaint in this Court alleging five tort claims, and one claim of breach of contract. Specifically, Plaintiffs alleged that Defendants: (1) acted negligently in offering and monitoring the SAIF investment opportunity; (2) negligently and fraudulently misrepresented the nature of this opportunity, including the

4

facts that SAIF's finance loans were collateralized by vehicle titles, and that the club members' investment dollars would work completely for their investments;[2] (3) fraudulently concealed such material facts as Defendant VRI's 4.5% "override" fee, and the ongoing racketeering litigation against SAIF; and (4) breached a fiduciary duty arising out of the parties' contractual relationship.  Plaintiffs also alleged that Defendant VRI breached a contract with them by failing to adequately investigate and monitor SAIF.

On July 18, 2008, Defendants moved to transfer this case to the United States District Court for the Central District of California.  On August 21, 2008, Plaintiffs responded to this motion.  On September 3, 2008, Defendants replied.

On July 25, 2008, Defendants answered Plaintiff's complaint.  With respect to Plaintiffs' jurisdictional and venue allegations, Defendants represented, *inter alia*, that: (1) they did not conduct business in Colorado; (2) they did not have an office, phone, or representative in the state; (3) only ten of Defendant VRI's approximately 1,500 club members resided in Colorado; and (4) only two of these Defendant VRI club members ever invested funds through Defendant VRI.

On September 12, 2008, Defendants filed the instant motion to dismiss for lack of personal jurisdiction, arguing that maintenance of this lawsuit would offend traditional notions of fair play and substantial justice because they lacked minimum contacts with

---

[2]Although Plaintiffs' negligent and fraudulent misrepresentation claims are pled separately, they rely upon essentially the same facts.

5

Colorado. On October 2, 2008, Plaintiffs responded to this motion, but did not address it on its merits. On October 6, 2008, Defendants replied.

On October 30, 2008, Defendants filed a self-styled "cross-complaint" against Mr. Sterling.[3] On November 26, 2008, Plaintiffs' moved to strike this document as an untimely attempt to amend Defendants' answer without leave of Court. Defendants have not yet responded to this motion.

On November 6, 2008, Defendants filed the instant motion to dismiss for failure to join an indispensable party, arguing that this case cannot go forward without joining Mr. Sterling as a defendant. On November 26, 2008, Plaintiffs responded to this motion. On December 3, 2008, Defendants replied.

The instant motions to dismiss are fully briefed and ripe for review, and the outstanding procedural motions are currently set for a hearing before the magistrate judge on January 16, 2009.

**ANALYSIS**

In two separately filed motions, Defendants alternately move to dismiss for: (1) lack of personal jurisdiction; and (2) failure to join an indispensable party. The Court will address each motion in turn.

*A.    Motion to Dismiss for Lack of Personal Jurisdiction*

Defendants first move to dismiss for lack of personal jurisdiction, arguing that

---

[3]The Court notes that Mr. Sterling is not currently a defendant in this action, and the docket provides no indication that he was ever served with what, at least charitably read, is an attempted third-party complaint against him.

maintenance of this lawsuit would offend traditional notions of fair play and substantial justice because they lack minimum contacts with Colorado.  Plaintiffs do not respond to this motion on its merits, but instead argue that Defendants' jurisdictional challenge is untimely and has therefore been waived.  For the following reasons, the Court finds that this defense has not been waived, but nonetheless reserves determination upon its merits pending further briefing.

Federal Rule of Civil Procedure 12(b) permits a defendant to raise certain defenses — including lack of personal jurisdiction and improper venue — in an answer, or in a pre-answer motion.  Fed. R. Civ. P. 12(b)(2)–(3) (2008).  Rule 12(g)(2), moreover, provides that if a defendant makes a motion under Rule 12, it "must not make another motion under this rule raising a defense or objection that was available to the [defendant] but omitted from its earlier motion."[4]  Fed. R. Civ. P 12(g)(2) (2008).

Although a defendant waives certain defenses, including lack of personal jurisdiction, by failing to consolidate them with other Rule 12(b) defenses asserted in an earlier motion, *see* Fed. R. Civ. P. 12(h)(1)(A) (2008), the defendant may nonetheless move for pretrial determination of any Rule 12(b) defense properly raised in an answer, assuming that such a motion would not run afoul of Rule 12's consolidation and waiver requirements.  *See* Fed. R. Civ. P. 12(i) (2008); *see also* 5C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1373 (3d ed.

---

[4]Rule 12(g) provides exceptions from this requirement for motions asserting failure to state a claim, failure to join an indispensable party, or lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(g)(2) (2008).  None of these exceptions is relevant to Defendants' instant motion to dismiss for lack of personal jurisdiction.

2007) (hereinafter "WRIGHT & MILLER").

In the instant case, the Court finds for the following reasons that: (1) Rule 12's consolidation and waiver requirements do not bar Defendants from instantly moving for a pretrial determination of their personal jurisdiction defense;[5] and (2) Defendants have properly raised this defense in their answer. Accordingly, the Court finds that Defendants have preserved their right to a pretrial determination of this defense on its merits.

First, as to the possibility of waiver, the Court finds that Defendants were not required to consolidate their motion to dismiss for lack of personal jurisdiction with their earlier motion to transfer venue because that earlier motion did not raise a Rule 12(b) defense. Specifically, Defendants' July 18, 2008, motion to transfer venue was brought under 28 U.S.C. § 1404(a),[6] and was thus distinguishable from a motion to dismiss brought under Rule 12(b)(3) for improper venue. *Compare* 28 U.S.C. § 1404(a) (2006) (allowing district courts to transfer civil actions for the convenience of parties and witnesses and in the interest of justice), *with* Fed. R. Civ. P. 12(b)(3) (2008) (permitting parties to raise the defense of "improper venue" in a pleading or a motion); *see also*

---

[5]The Court notes that, although Defendants originally only invoked Rule 12(b)(2) as the purported basis of the Court's authority to hear their defense, they subsequently invoked, *in their reply brief*, the pre-2007 version of Rule 12(i) as an alternative basis upon which the Court could reach the merits of their defense.

[6]The Court acknowledges that, although Defendants' original motion was opaque regarding the legal authority purportedly entitling Defendants to transfer — invoking only an inapposite New York rule of civil procedure — Defendants subsequently acknowledged, *in their reply brief*, that they were seeking transfer under section 1404(a).

*School-Link Tech. Inc. v. Applied Res. Inc.*, No. 05–02088–JWL, 2005 WL 2269182, at *2 (D. Kan. Sept. 16, 2005) (finding that a motion to transfer venue was "not a Rule 12 motion" even though it invoked both section 1404(a) and Rule 12(b)(3)); 5B WRIGHT & MILLER § 1352 (noting that motions to transfer are technically brought under section 1404(a), not Rule 12(b)(3), and that the distinction is relevant to Rule 12(g)'s consolidation requirement).

Because Defendants' July 18, 2008, motion to transfer did not raise a Rule 12(b) defense, the Court finds that Defendants did not waive their personal jurisdiction defense by failing to consolidate it with their earlier motion to transfer venue. *See, e.g.*, Fed. R. Civ. P. 12(g)(2) (2008) (limiting Rule 12's consolidation requirement to successive Rule 12 motions); Fed. R. Civ. P. 12(h)(1)(A) (2008) (limiting waiver to those Rule 12(b) defenses that were not consolidated in accordance with Rule 12(g)(2)); *see also, e.g.*, *Red Wing Shoe Co. v. B-Jays USA, Inc.*, No. 02-257, 2002 WL 1398538, at *2 (D. Minn. June 26, 2002) (finding that a defendant who had previously filed a Rule 12 motion was not barred from subsequently filing a section 1404(a) motion).

Second, the Court finds that Defendants properly raised the defense of lack of personal jurisdiction in their answer in light of the liberal pleading standards embodied in the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 8(d) (2008) (reciting that "no technical form is required" in pleadings); *see also Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 307 (2d. Cir. 2002) (noting that, "to preserve the defense of lack of personal jurisdiction, a defendant need not articulate the defense with any rigorous

9

degree of specificity"). Specifically, in the jurisdiction and venue section of their answer, Defendants alleged that: (1) they did not conduct business in Colorado; (2) they did not have an office, phone, or representative in the state; (3) only ten of Defendant VRI's approximately 1,500 club members resided in Colorado; and (4) only two of these club members ever invested funds through Defendant VRI.

The Court finds such representations sufficient to raise the defense of lack of personal jurisdiction in light of the federal civil rules' liberal pleading standards, and in consideration of the substantive standards governing a court's exercise of personal jurisdiction over a defendant. *See, e.g.*, *Int'l Beauty Prods., LLC v. Beveridge*, 402 F. Supp. 2d 1261, 1272 (D. Colo. 2005) (stating that a court may exercise general jurisdiction over a defendant who has "systematic and continuous" contacts with the forum state, and observing that (1) frequency of travel to the forum state, (2) frequency and amount of work performed in the forum state, and (3) ownership of property in the forum state are all relevant factors in considering whether "systematic and continuous" contacts exist).

Based on the foregoing, the Court finds that Defendants have preserved their right to a pretrial determination of their personal jurisdiction defense by raising this defense in their answer, and by not running afoul of Rule 12's consolidation and waiver principles. Nonetheless, in light of Defendants' repeated failure to clearly enunciate the

legal bases of their motions until goaded into doing so by Plaintiffs' responses,[7] the Court finds that equity militates in favor of reserving determination on Defendants' motion until Plaintiffs have fully briefed this motion. Accordingly, the Court holds this motion in abeyance pending the further briefing ordered below.

### *B.     Motion to Dismiss for Failure to Join an Indispensable Party*

Defendants next move to dismiss for failure to join an indispensable party, arguing that this case cannot go forward without joining Mr. Sterling as a defendant. While not disputing that this motion is timely filed,[8] Plaintiffs argue that Defendants have not carried their burden of establishing that Mr. Sterling is an indispensable party. For the following reasons, the Court agrees with Plaintiffs.

Federal Rule of Civil Procedure 19(a)(1) provides as follows:

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

---

[7]For instance, Defendants only invoked the pre-2007 version of Rule 12(i) in their *reply* to their motion to dismiss, and they only invoked section 1404(a) in their *reply* to their motion to transfer venue. *See* footnotes 5–6, *supra*. Such motions practice violates this Court's local rules, and may expose Defendants to sanctions should it continue. *See, e.g.*, D.C.COLO.LCivR 7.1(c) (2008) (stating that "a motion involving a contested issue of law shall state under which rule or statute it is filed").

[8]The Court notes that Rules 12(g)(2) and 12(h)(2) expressly exempt motions to dismiss for failure to join an indispensable party from Rule 12's consolidation and waiver requirements. *See* Fed. R. Civ. P. 12(g)(2) (2008); Fed. R. Civ. P. 12(h)(2) (2008).

11

> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1) (2008).

Under Rule 19(a)(2), a district court must order the joinder of any person qualifying under Rule 19(a)(1), assuming that the person has not already been joined. *See* Fed. R. Civ. P. 19(a)(1) (2008). Moreover, under Rule 19(b), a district court must consider four enumerated factors in determining "whether, in equity and good conscience, the action should proceed among the existing parties, or should be dismissed" if persons to be joined under Rule 19(a) cannot be joined for jurisdictional or other reasons. *See* Fed. R. Civ. P. 19(b)(1)–(4) (2008).

A district court must conduct a two-step analysis before dismissing a complaint for failure to join an indispensable party. *Davis v. United States*, 343 F.3d 1282, 1289 (10th Cir. 2003). First, the court must determine whether the absent person is "necessary" by virtue of satisfying any of Rule 19(a)(1)'s requirements. *Id.* Second, if the court finds that the absent person is "necessary," but that his or her joinder is not feasible, the court must then decide whether the person is "indispensable" with reference to the four enumerated factors in Rule 19(b). *Id.* If the court finds that the absent party is "indispensable," it must dismiss any claims that cannot equitably proceed absent the party's joinder. *Id.*

The party moving for dismissal of an action for failure to join an indispensable

party bears the burden of persuasion that such dismissal is proper.  *Rishell v. Jane Phillips Episcopal Memorial Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996).

In the instant case, the Court finds for the following reasons that Defendants have failed to carry their burden of establishing that Mr. Sterling is a "necessary" party, and accordingly declines to consider whether Mr. Sterling might also be "indispensable."

### *1.     According Complete Relief Among Existing Parties*

As indicated above, Mr. Sterling might be "necessary" to this action if, in his absence, the "court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A) (2008).  Defendants advance only two arguments potentially directed at showing that the Court would be unable to afford complete relief among the existing parties if Mr. Sterling is not joined.  For the following reasons, the Court finds both arguments unpersuasive.

First, Defendants argue that Mr. Sterling's absence from this action will prevent Plaintiffs from receiving complete relief because Plaintiffs' claims are destined to fail on their merits.  For instance, Defendants contend that they were under no duty to conduct ongoing due diligence into SAIF, and that they cannot be held liable under federal securities law.  The Court rejects such arguments out of hand because "the underlying merits of the litigation are irrelevant under Fed. R. Civ. P. 19(a)."  *Citizen Potawatomi v. Norton*, 248 F.3d 993, 998 (10th Cir. 2001); *see also Davis*, 343 F.3d 1291 (same).

Second, Defendants argue that Mr. Sterling's absence from this action will prevent Plaintiffs from receiving complete relief because Plaintiffs have viable claims

13

against Mr. Sterling that they have not asserted.  Specifically, Defendants suggest in their "cross-complaint" that each of Plaintiffs' tort and contract claims against them could properly be brought against Mr. Sterling.  The Court finds such arguments misdirected because they incorrectly presuppose that Rule 19(a)(1)(A) requires the joinder of parties whose absence would preclude the Court from according complete relief *to the existing parties*, not "*among the existing parties*."  Fed. R. Civ. P. 19(a)(1)(A) (2008).  Defendants have cited no law to this radical effect, and the Court notes that such a broad reading of Rule 19(a)(1)(A) would render Rule 20(a)(2)'s permissive joinder of defendants nugatory by denying Plaintiffs the right to structure their own lawsuit.  *See, e.g.*, Fed. R. Civ. P. 20(a)(2) (2008) (permitting plaintiffs to join as defendants any individuals involved in the same underlying transaction or occurrence).

Based on the foregoing, the Court finds that Defendants have failed to carry their burden of establishing that Mr. Sterling's absence would prevent the Court from according complete relief among the existing parties.  *See Rishell*, 94 F.3d at 1411 (stating that moving party has the burden of persuasion in a Rule 19 motion).

### 2. *Impairing or Impeding Mr. Sterling's Ability to Protect His Interest*

As indicated above, Mr. Sterling might also be a "necessary" party to this action if disposing of the lawsuit in his absence might "as a practical matter impair or impede [his] ability to protect" any interest he claims in the action.  Fed. R. Civ. P. 19(a)(1)(B)(i) (2008).  Nonetheless, Defendants have advanced no argument that Mr. Sterling's claimed interests might be impaired or impeded absent his joinder, and the Court

14

accordingly finds that they have failed to carry their burden of establishing he is a "necessary" party on this basis.  See *Rishell*, 94 F.3d at 1411.

### 3. *Exposing Existing Parties to Double, Multiple, or Otherwise Inconsistent Obligations*

Finally, as indicated above, Mr. Sterling might be a "necessary" party to this litigation if disposing of the action in his absence may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" because of any interest Mr. Sterling claims in this action.  Fed. R. Civ. P. 19(a)(1)(B)(ii) (2008).  Defendants advance only one argument potentially directed at showing that they would be adversely affected absent Mr. Sterling's joinder.  For the following reasons, the Court finds this argument insufficient to establish that Mr. Sterling is "necessary" under Rule 19(a)(1)(B)(ii).

Defendants contend that, to whatever extent they might be liable on Plaintiffs' claims, they are entitled to indemnification by Mr. Sterling under substantive tort law, and pursuant to a contractual indemnification provision.  Whether or not this is true, the Court finds that Defendants have failed to carry their burden of showing that their inability to enforce such indemnification rights absent Mr. Sterling's joinder would leave them subject to "double, multiple, or otherwise inconsistent obligations" because of any interest Mr. Sterling claims in this litigation.  *See, e.g.*, *Rishell*, 94 F.3d at 1411; *see also Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7–8 (1990) (joint tortfeasors are neither "necessary" nor "indispensable" parties)*; Alfa Life Ins. Co. v. Advantage Consulting Group*, 236 F.R.D. 570 (M.D. Ala. 2006) (finding on analogous facts that an absent

15

software developer was not a necessary party in a lawsuit brought by a customer against a computer data conversion consultant where the consultant claimed that the developer would have to indemnify it on any adverse judgment).

Finally, although Defendants fail to carry their burden of persuasion in this motion, the Court notes that Rule 14 already provides a joinder mechanism for indemnification claims against third parties. S*ee* Fed. R. Civ. P. 14(a)(1) (2008) (permitting a defendant to serve a third-party complaint on any nonparty "who is or may be liable to it for all or part of the claim against it"); 7 WRIGHT & MILLER § 1623 (observing that Rule 14, not Rule 19, is the proper joinder mechanism for third-party joint tortfeasors). Accordingly, this Court directs the magistrate judge to consider, in addressing Plaintiffs' outstanding motion to strike Defendants' self-styled "cross-complaint" (Dkt. # 43), whether this pleading should be construed as a third-party complaint against Mr. Sterling.

### *3. Conclusion*

Based on the foregoing, the Court hereby ORDERS that:

1. Defendants' motion to dismiss for lack of personal jurisdiction (#23) is HELD IN ABEYANCE pending further briefing;

    a. Plaintiffs are ordered file a response to this motion addressing whether personal jurisdiction is proper on or before January 12, 2009; and

    b. Defendants are directed to file a reply to this response on or before

January 27, 2009.

2. Defendants' motion to dismiss for failure to join an indispensable party (#33) is DENIED; and

3. The magistrate judge is directed to consider, in addressing Plaintiffs' outstanding motion to strike Defendants' self-styled "cross-complaint" (Dkt. # 43), whether this pleading should be construed as a third–party complaint against Mr. Sterling.

DATED: December 22, 2008

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge